# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JOHN ENDERLE and MARGUERITE
ENDERLE,

                                           3:17cv1510 (WWE)

    v.

AMICA MUTUAL INSURANCE CO.

## RULING ON MOTION TO DISMISS

In this action, plaintiffs John and Marguerite Enderle challenge the defendant Amica Mutual Insurance's failure to provide coverage for the damage to basement walls of their home. Plaintiffs allege breach of contract, breach of the duty of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). Defendant has filed a motion to dismiss.

## FACTUAL BACKGROUND

For purposes of ruling on this motion to dismiss, the Court assumes that all of the factual allegations in the complaint are true. The Court also includes facts concerning the insurance policies that plaintiff did not attach but that are integral to the complaint.[1]

---

[1] See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).

1

Plaintiffs own a home in South Windsor, Connecticut that was built in 1984. Plaintiffs have insured the property with defendant since their purchase of the home.

Plaintiffs have discovered visible cracking in the concrete of their home. On October 16, 2015, and April 20, 2017, professional engineers inspected the concrete at plaintiffs' home. The engineers reported that a chemical reaction was occurring within the concrete that would eventually cause the structure to fail.

Plaintiffs requested coverage for the damage caused by the condition of the basement walls. On May 30, 2017, defendant denied the coverage request from plaintiffs.

Policies

Defendants issued four policies of insurance to plaintiffs for their home between March 3, 2014 and March 3, 2018.

The policies all provided additional coverage for collapse and reasonable repairs. Relevant to reasonable repairs, the policies provided that defendant "will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage." However, the

2

Collapse provisions applied "only to an abrupt collapse" which was defined as "an abrupt falling down or caving in of a building with the result that the building or part of the building cannot be occupied for its intended purpose." The Collapse coverage specified that it did not apply to: "(1) A building or any part of a building that is in danger of falling down or caving in; (2) A part of a building that is standing, even if it has separated from another part of the building; or (3) A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion."

    The policies insured for "physical loss to covered property involving collapse of a building or any part of a building if such collapse was caused by one or more of the following: (1) The Perils Insured Against; (2) Decay…that is hidden from view, unless the presence of such decay is known to an insured prior to collapse; … (6) Use of defective material or methods in construction, remodeling or renovation."   In Section 2(b) of the Perils Insured Against provision, the policies provided that defendant did not insure for loss involving collapse including:

    (1) An abrupt falling down or caving in;
    (2) Loss of structural integrity including separation of parts of the
        property or property in danger of falling down or caving in; or

> (3) Any Cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above;
> Except as provided in E.8. Collapse under Section I – Property Coverages. However, any ensuring loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

Section 2(c) of the Perils Insured Against provided that defendant did not insure for loss:

> Caused by: …
> (6) Any of the Following:
> (a) Wear and tear, marring deterioration;
> (b) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;
> (c) Smog, rust or other corrosion; …
> (f) Settling, shrinkage, bulging or expansion, including resultant cracking, or bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings.

## **DISCUSSION**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds

upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiffs maintain that the policy provides coverage for a state of collapse caused by chemical reaction in the materials used in the construction of the building. Additionally, plaintiffs argue that the damage is covered as a direct physical loss due to a chemical reaction that is not a loss precluded from coverage; and that the damage should be covered under the provision for reasonable repairs. Defendant attacks plaintiffs' coverage claim, arguing that the collapse provision requires an abrupt collapse, and that plaintiffs' damage is further excluded by other policy provisions.

Insurance contracts are to be interpreted according to the same rules that govern the construction of written contracts. Great Lakes Reinsurance (UK), PLC v. JDCA, LLC, 2014 WL 6633039, at *8 (D. Conn. Nov. 21, 2014). Insurance policy words must be accorded their ordinary

and natural meaning, and any ambiguity in the terms of the policy must be construed in favor of the insured.  Hansen v. Ohio Casualty Ins. Co., 239 Conn. 537, 542 (1996).  "The determinative question is the intent of the parties," as disclosed by the policy terms viewed in their entirety. Community Action for Greater Middlesex County, Inc. v. American Alliance Insurance Co., 254 Conn. 387, 399 (2000).  The court must "look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result."  O'Brien v. U.S. Fid. & Guar. Co., 235 Conn. 837, 843 (1996).

In interpreting contract terms, the Court must afford the language used "its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract."  Wolosoff v. Wolosoff, 91 Conn. App. 374, 381 (2005).  Where the language of the contract is clear and unambiguous, the contract should be given effect according to its terms.  Breiter v. Breiter, 80 Conn. App. 332, 336 (2003). A contract is unambiguous when its language is clear and conveys a definite and precise intent.  Cantonbury Heights Condominium, Inc. v. Local Land Dev. LLC, 273 Conn. 724, 735 (2005).  "A contract term not

expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument. . . ."  Heyman v. CBS, Inc., 178 Conn. 215, 227 (1979).  "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings."  Barnard v. Barnard, 214 Conn. 99, 110 (1990).

Ambiguity "must emanate from the language used" by the parties. United Illuminating Co. v. Wisvest-Connecticut, LLC, 259 Conn. 665, 671 (D. Conn. 2002).  If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous.  Lopinto v. Haines, 185 Conn. 527, 538 (1981).  The question of whether a contractual provision is ambiguous presents a question of law.  LMK Enterprises, Inc. v. Sun Oil Co., 86 Conn. App. 302, 306 (2004).  Where a contract term is found to be ambiguous, the court may properly discern the intent of the contract through consideration of extrinsic evidence.  see United Illuminating Co., 259 Conn. at 675.

Insurance policy words must be accorded their ordinary and natural meaning, and any ambiguity in the terms of the policy must be construed in

favor of the insured. Hansen, 239 Conn. at 542 (1996). "The determinative question is the intent of the parties," as disclosed by the policy terms viewed in their entirety. Community Action for Greater Middlesex County, Inc., 254 Conn. at 399. A policy should be taken as a whole and all of its relevant provisions considered in connection with each other. A.M. Larson Co. v. Lawlor Ins. Agency, 153 Conn. 618, 622 (1966).

Plaintiffs maintain that the chemical reaction within the concrete is causing the basement walls to crack and cave in. Thus, plaintiffs assert that the collapse coverage applies because the structural integrity of the building is compromised.

In considering similar policy language, this Court has held that coverage was not applicable to a progressive condition causing deterioration where the house remained upright and inhabitable. Hurlburt v. Massachusetts Homeland Ins. Co., 2018 WL 1035810, *7 (D. Conn. Feb. 23, 2018); England v. Amica Mutual Ins. Co., 2017 WL 3996394, *5 (D. Conn. Sept. 11, 2017) (citing cases). The Court agrees and finds that the policies unambiguously preclude coverage for progressive damage to the basement walls where the building is still standing and able to be used for its intended purpose. Here, plaintiffs have not alleged that the building has

8

abruptly fallen down or caved in such that it cannot be occupied for its intended purpose.

Plaintiffs argue that they have sustained a direct physical loss due to a chemical reaction, which is not precluded by the policy terms. However, the policies explicitly preclude coverage for a loss caused by, <u>inter</u> <u>alia</u>, latent defect, deterioration, and cracking. Since the alleged chemical reaction causes the concrete to deteriorate and crack, the coverage for the loss is unambiguously precluded. See <u>England</u>, 2017 WL 3996394, at *8 ("It does not matter whether the originating event behind the cracking and deterioration was a chemical reaction; the exclusion in the Policies make no exception for losses for which the cause is itself a product of a chemical reaction.")

Additionally, under the policy terms, plaintiff can only claim coverage under the "reasonable repairs" or the "ensuing loss" provisions to the extent that their claimed loss is not otherwise precluded. The reasonable repairs coverage applies only "to protect covered property." "An ensuing loss" exception applies to provide coverage where an occurrence causes a loss separate and independent but still resulting from the original excluded occurrence. See <u>New London City Mut. Ins. Co. v. Zachem</u>, 2012 WL

1292662, at *2 (Conn. Super. Ct. March 29, 2012). Residual damage does not constitute an "ensuing loss" if it was proximately caused by the non-covered occurrence. Sansone v. Nationwide Mut. Fire Ins. Co., 47 Conn. Sup. 35, 39 (Super. Ct. 1999). In Mazzarella v. Amica Mutual Ins. Co., this Court explained that contamination from chemicals released from building materials due to wear and tear, a non-covered event, may be covered under ensuing loss provisions; the contamination results from wear and tear but is a distinct loss. 2018 WL 780217, at 6 (D. Conn. Feb. 8, 2018). Here, plaintiffs seek coverage for cracking and deterioration caused by a chemical reaction; however, cracking and deterioration losses are clearly precluded under the policies. "Where a property insurance policy contains an exclusion with an exception for ensuing loss, courts have sought to assure that the exception does not supersede the exclusion by disallowing coverage for ensuing loss directly related to the original excluded risk." Yale University v. Cigna Ins. Co., 224 F. Supp. 2d 402, 420 (D. Conn. 2002). Accordingly, plaintiffs can plead plausible claims for coverage under neither the reasonable repairs provision nor the ensuing loss provision. The motion to dismiss will be granted.

**Breach of Covenant of Good Faith and Fair Dealing and CUTPA**

In light of the Court's finding that defendant did not wrongfully deny coverage or impede enforcement of the contract, the Court will dismiss the claim for breach of the implied covenant of good faith and fair dealing. See Mazzarella, 2018 WL 780217, at *7. Similarly, where defendant properly interpreted the contract, a claim that defendant violated CUTPA due to its oppressive, unethical or unscrupulous manner in interpreting the contract must fail. Id. (Without obligation to pay under the policy, defendant could not have violated CUIPA/CUTPA). Accordingly, counts two and three will be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [doc. #16] is GRANTED. The clerk is instructed to close this case.

Dated this 2d day of May 2018 at Bridgeport, Connecticut.

/s/Warren W. Eginton
Warren W. Eginton
Senior U.S. District Judge